UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

United States of America,

    Plaintiff,

  vs.         REPORT AND
              RECOMMENDATION

Michael John Wells,

      Defendant.    Crim.  07-0248 (JNE/RLE)

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

I. Introduction

This matter came before the undersigned United States Magistrate Judge pursuant to a general assignment, made in accordance with the provisions of Title 28 U.S.C. §636(b)(1)(B), upon the Defendant's Motions to Suppress.  A Hearing on the Motions was conducted on September 4, 2007,[1] at which time, the Defendant

---

[1]A copy of a video exhibit, which the Government intended to offer, was not available for the Defendant's review either at, or before, the Suppression Hearing.  As a result, counsel for the Defendant requested an opportunity to review the video before closing the Record in this matter.  On September 20, 2007, not having heard further from defense counsel, this Court's Judicial Assistant telephoned him, and was advised that the Defendant would be making no further submissions.  Accordingly, we took

(continued...)

appeared personally, and by Andrew H. Mohring, Assistant Federal Defender, and the

Government appeared by Michael A. Dees, Assistant United States Attorney.

For reasons which follow, we recommend that the Defendant's Motion to

Suppress the statements that he made on January 16, 2007, be denied.[2]

## II.  Factual and Procedural Background

The Defendant is charged with one (1) Count of possessing a firearm by a felon,

in violation of Title 18 U.S.C. §§922(g)(1), and 924(a)(2).  The events which gave rise

to that charge are alleged to have taken place on or about January 16, 2007, in this

State and District.

At the Hearing, the Government presented the testimony of Rodney M.  Wilson

("Wilson"), who is an Investigator with the Duluth Police Department.  As pertinent

---

[1](...continued)
the Suppression Motion under advisement on September 20, 2007.

[2]The Defendant filed a Motion to Suppress evidence that was obtained by a
search that was conducted on January 16, 2007, but, at the time of the Hearing, the
Defendant withdrew that Motion.  Accordingly, the Clerk of Court is directed to
record that this Motion of the Defendant was withdrawn.  In addition, the Defendant
filed a Motion to Suppress the statements he made to law enforcement on March 4,
2006, but, at the Hearing, the Government advised that it did not intend to offer those
statements in its case-in-chief at Trial, and therefore, we recommend that the Motion
of the Defendant to suppress those statements be denied, as moot.

to the indicted offense, and to the Motions now before us, the operative facts may be briefly summarized.[3]

At the Hearing, Wilson testified that it was his practice to advise suspects of their rights, as enunciated in <u>Miranda v. Arizona</u>, 384 U.S. 436, 444 (1966), by reading those rights from a card that was issued by the Duluth Police Department.  Wilson became involved in the Defendant's case, when he was called to assist in the Defendant's arrest in Superior, Wisconsin, on January 16, 2007, after which he interviewed the Defendant at the Duluth Police Station.  The interview of the Defendant by Wilson, and Mark Gunderson ("Gunderson"), who is an officer with the Hermantown Police Department, took place in an interview room that measured approximately fourteen (14) feet by ten (10) feet.  According to Wilson, both officers

---

[3]Rule 12(d), Federal Rules of Criminal Procedure, provides that "[w]hen factual issues are involved in deciding a motion, the court must state its essential findings on the record."  See, <u>United States v. Santiago</u>, 410 F.3d 193, 198 (5th Cir. 2005), cert. denied, 126 S.Ct. 1565 (2006).  As augmented by our recitation of factual findings in our "Discussion," the essential factual findings, that are required by the Recommendations we make, are contained in this segment of our Opinion.  Of course, these factual findings are preliminary in nature, are confined solely to the Motions before the Court, and are subject to such future modification as the subsequent development of the facts and law may require.  See, <u>United States v. Moore</u>, 936 F.2d 287, 288-89 (6th Cir. 1991); <u>United States v. Prieto-Villa</u>, 910 F.2d 601, 610 (9th Cir. 1990).

wore plainclothes, and carried weapons that were holstered, but concealed by their clothing throughout the interview.

At the start of the interview, Wilson removed the Defendant's handcuffs, and Wilson testified that the Defendant appeared to be calm and collected throughout his questioning by the officers, who sat on either side of the Defendant at a table. The interview lasted approximately forty-five (45) minutes, during which time, Wilson provided the Defendant with water, and would have permitted the Defendant to take a break, or to visit the restroom, had such a request been made.

According to Wilson, the Defendant exhibited no signs of intoxication, by drugs or alcohol, during the interview, and his answers to the questions posed to him were straightforward and coherent. On being informed of his <u>Miranda</u> rights, the Defendant stated that he did not require a lawyer and, at no time during the interview, did he invoke his right to remain silent. Wilson testified that he did not make any promises to the Defendant during the course of the interview, and did not threaten or intimidate the Defendant, and that the Defendant did not refuse to answer any question that was put to him. A videotaped record of the interview was made, and Wilson stated that he started the videotape immediately before entering the interview room and

introducing himself to the Defendant, and did not turn off the videotape until after the interview was completed.

On questioning from the Defendant's counsel, Wilson noted that, although he was present at the Defendant's arrest, he did not speak with the Defendant until he arrived at the Duluth Police Station and, to his knowledge, no other officer spoke to the Defendant prior to the interview Wilson conducted.  Wilson admitted that, prior to taking any statements from the Defendant, he discussed the charges that the Defendant was facing, although he did not recall discussing possible penalties that could arise from those charges.

Wilson further acknowledged that he told the Defendant that he would perform a comparative DNA analysis on the weapon that was involved in the charges against him, and that, if the Defendant had touched that weapon, his DNA would be present. According to Wilson, the interview ended when he had exhausted his questions for the Defendant.  Counsel for the Defendant asked Wilson to comment on his Report, in which he had noted that, when the Defendant was asked if he had been treated fairly, the Defendant replied that he had not, and Wilson stated that he believed that counsel for the Defendant had been given a draft version of his Report, and that the final

version of the Report, as well as his personal recollection, was that the Defendant had stated that he believed that he had been treated fairly.[4]

### III.  Discussion

#### The Defendant's Motion to Suppress the Statements he made on January 16, 2007.

1.    Standard of Review.   Here, all agree that, at the time that his statement was taken on January 16, 2007, the Defendant was in official custody, which requires the administration of a Miranda warning if the statement is to be admissible in the Government's case-in-chief.  See, Thai v. Mapes, 412 F.3d 970, 976 (8th Cir. 2005), cert. denied, 546 U.S. 1039 (2005)("In Miranda, the Court held that police officers must inform a suspect of his Fifth Amendment privilege against self-incrimination prior to initiating a custodial interrogation.").  "A suspect may then waive these rights provided that the waiver is knowing, voluntary, and intelligent."  Id. at 977, citing Miranda v. Arizona, supra at 444.  "A waiver is 'knowing and intelligent' where it is made with full awareness of both the nature of the right being abandoned and the consequences of abandoning the right, and a waiver is 'voluntary' where the court can

---

[4]Our independent review of the videotape, that was made during the course of the Defendant's interview, corroborates Wilson's recollection, as the Defendant clearly stated that he had been treated fairly, and had no complaints regarding any of the officers.

determine that the waiver was a product of the suspect's fee and deliberate choice, and not the product of intimation, coercion, or deception." United States v. Bell, 477 F.3d 607, 612 (8th Cir. 2007), quoting Thai v. Mapes, supra at 977.

Of course, "[a] statement is not voluntary if the totality of the circumstances shows the defendant's will was overborne." United States v. Annis, 446 F.3d 852, 855 (8th Cir. 2006), cert. denied, --- U.S. ---, 2007 WL 2457492 (U.S., August 31, 2007). As the Supreme Court has recently explained:

> The due process test takes into consideration "the totality of all the surrounding circumstances -- both the characteristics of the accused and the details of the interrogation." [Schneckloth v. Bustamonte, 412 U.S. at 226.] See also Haynes [v. Washington, 373 U.S. 503, 513] (1963); Gallegos v. Colorado, [370 U.S. 49, 55] (1962); Reck v. Pate, [367 U.S. 433, 440] (1961) ("[A]ll the circumstances attendant upon the confession must be taken into account"); Malinski v. New York, [324 U.S. 401, 404] (1945)("If all the attendant circumstances indicate that the confession was coerced or compelled, it may not be used to convict a defendant"). The determination "depend[s] upon a weighing of the circumstances of pressure against the power of resistance of the person confessing." Stein v. New York, [346 U.S. 156, 185] (1953).

Id. at 434.

Among the circumstances, which are to be considered in this analysis are, first and foremost, whether a Miranda warning has been given, see, Withrow v. Williams, 507

U.S. 680, 693 (1993); any elements of "police coercion," see, <u>Colorado v. Connelly</u>, 479 U.S. 157, 167 (1986); the length of the interrogation, see, <u>Ashcraft v. Tennessee</u>, 322 U.S. 143, 153-154 (1944); the location of the interrogation, see, <u>Reck v. Pate</u>, 367 U.S. 433, 441 (1961); and the continuous nature of the interrogation, see, <u>Leyra v. Denno</u>, 347 U.S. 556, 561 (1954).  See also, <u>Withrow v. Williams</u>, supra at 693 (listing the applicable considerations).

Lastly, "[t]he government has the burden of proving by a preponderance of the evidence that, under the particular facts and circumstances of the case, the waiver was an intentional, voluntary, knowing, and intelligent relinquishment or abandonment of a know right or privilege."  <u>United States v. Black Bear</u>, 422 F.3d 658, 663 (8th Cir.2005), citing <u>United States v. LeBrun</u>, 363 F.3d 715, 724 (8th Cir. 2004)[en banc].

2.     <u>Legal Analysis</u>.  The Defendant argues that the statements made by him, during the interview on January 16, 2007, were involuntary and obtained by deception, and that, as a result, those statements should be suppressed.[5]  However, the Defendant

───────────────

[5]We note that, in his supporting Memorandum, the Defendant also asserted that he was unlawfully in custody, in violation of his rights under the Fourth Amendment, and that, therefore, his statements should be suppressed on that ground as well. However, at the Hearing, no evidence was presented to so much as intimate that his arrest was constitutionally infirm and, on the Record presented, we find the Defendant's arrest lawful.

has failed to offer any evidence to contradict the testimony of Wilson, that he was informed of his <u>Miranda</u> rights, and knowingly, voluntarily, and intentionally, waived them at the commencement of his questioning.

We have independently reviewed a copy of the videotape that was made of the Defendant's interrogation at the Duluth Police Headquarters, and that recording verifies Wilson's testimony that, at the beginning of the interview, the Defendant was read a <u>Miranda</u> warning from a card that was issued by the Duluth Police Department, the Defendant acknowledged that he understood the rights that were read to him, and that he agreed to speak with the officers in the absence of legal counsel.   While the Defendant signed no form to memorialize his waiver, Courts have recognized the effectiveness of oral waivers, and we find no basis to hold differently here.   See, <u>United States v. Jimenez</u>, 478 F.3d 929, 933 (8th Cir. 2007)("The Supreme Court has never held that an accurate oral warning may not suffice to inform a suspect of his constitutional rights."), quoting <u>Thai v. Mapes</u>, supra at 977; <u>United States v. Saenz</u>, 474 F.3d 1132, 1132 (8th Cir. 2007)("Consent can be given orally or in writing, and it is not necessary to use a written consent form."), citing <u>United States v. Siwek</u>, 453 F.3d 1079, 1084 (8th Cir. 2006).

The Defendant claims no physical or mental impairments, which would have made him more susceptible to an unwitting waiver of his rights and, on this Record, we find none.  There is no hint in this Record, however slight, that the Defendant was impaired by alcohol or drugs, and Wilson's testimony, that the Defendant responded appropriately to the questions asked of him, is also corroborated by the videotape of the interview.  Moreover, in the videotape of the interview, Wilson asked the Defendant on two separate occasions whether he had consumed any drugs or alcohol prior to their questioning, and the Defendant responded that he had consumed a "shot" of alcohol approximately eight (8) hours prior to his arrest, but did not feel its effects, and was "completely sober."   At no time during the interview did the Defendant request the interrogation to stop, nor did he ever request the presence of an attorney.

Further, there is no evidence that the milieu of the interrogation was oppressive, relentless, debasing, or brutish.  The videotape of the interview revealed that the door to the interrogation room was left open, and that the atmosphere was friendly and straightforward.[6]  It is true that, during questioning, the Defendant was informed of the

----

[6]Although it was not mentioned during Wilson's testimony, the videotape reveals that the Defendant was also questioned an Investigator with the Superior Police (continued...)

nature of the charges against him, and was advised that a DNA test would be performed on a weapon, which was found at the Defendant's arrest, so as to reveal whether he had any contact with the weapon.  Even if the interviewing officers had warned the Defendant of the potential sentence he would face for the charges he was facing -- and they did not -- under the law of this Circuit, "[a] truthful and noncoercive statement of the possible penalties which an accused faces may be given to the accused without overbearing one's free will * * *."  Simmons v. Bowersox, 235 F.3d 1124, 1133 (8th Cir. 2001), citing United States v. Ballard, 586 F.2d 1060, 1063 (5th Cir. 1978); see also, United States v. Gallardo-Marquez, 253 F.3d 1121, 1123 (8th Cir. 2001)(upholding statements as voluntary when police officers told the defendant that he would receive a life sentence when the actual penalty was twenty-three (23) years).

Furthermore, we find nothing to suggest that the Defendant's Miranda waiver was the product of coercion, or of an overborne will.  The interview, insofar as it

---

[6](...continued)
Department and, later, by an Officer with the Minnesota Highway Patrol.  At no time did the Defendant express the slightest reluctance to speak with any of the officers, and his demeanor, throughout each of the officer's interviews, was cooperative, and unemotional.  Despite the presence, on occasion, of more than one law enforcement officer, our review of the videotape failed to disclose any showing of a police-dominated atmosphere.  Indeed, on this Record, the Defendant makes no showing that, through direct or subtle means, the atmosphere of his interview was infused with coercion, and our review of the interview revealed no basis to support such a showing.

related to the charges before us, was relatively short, the Defendant was not denied any amenity that he requested, and the tone of the questioning was conversational, and consistently low-key. Of course, we are mindful, that the "interrogation of a suspect will involve some pressure because its purpose is to elicit a confession." <u>United States v. Martin</u>, 369 F.3d 1046, 1055 (8th Cir. 2004), quoting <u>United States v. Astello</u>, 241 F.3d 965, 967 (8th Cir. 2001). Here, however, the commonly used stratagems -- "a raised voice, deception, or a sympathetic attitude on the part of the interrogator," <u>id.</u> at 1055, quoting <u>United States v. Astello</u>, supra at 967 -- were not employed and, even if they had been, our Court of Appeals has recognized that such approaches "will not render a confession involuntary unless the overall impact of the interrogation caused the defendant's will to be overborne.'" <u>Id.</u>, quoting <u>United States v. Astello</u>, supra at 967, quoting, in turn, <u>Jenner v. Smith</u>, 982 F.2d 329, 334 (8th Cir. 1993). Here, we find no responsible basis to conclude that the Defendant's will was overborne by anything the officers said, or did.

In sum, our close review of the Record fails to disclose coercive conduct, by the interrogators, that was sufficient to overbear the Defendant's will, or critically impair his capacity for self-determination. See, <u>United States v. Santos-Garcia</u>, 313 F.3d 1073, 1079 (8th Cir. 2002). Accordingly, finding that the Defendant knowingly,

intelligently, and voluntarily, waived his <u>Miranda</u> rights, and thereafter, agreed to answer the questions of law enforcement, during the interview on January 16, 2007, we recommend that his Motion to Suppress that statement be denied.

NOW, THEREFORE, It  is --

RECOMMENDED:

1.     That, with respect to the Defendant's Motion to Suppress Evidence Obtained as a Result of a Search on January 16, 2007 [Docket No. 26], we recommend that the Clerk of Court record that Motion as having been withdrawn.

2.     That the Defendant's Motion to Suppress Statement made on March 4, 2006 [Docket No. 27], be denied, as moot.

3.     That the Defendant's Motion to Suppress Statement made on January 16, 2007 [Docket No. 27], be denied.

Dated:  September 21, 2007                     s/Raymond L. Erickson
                                               Raymond L. Erickson
                                               CHIEF U.S. MAGISTRATE JUDGE

- 13 -

## NOTICE

Pursuant to Rule 45(a), Federal Rules of Criminal Procedure, D. Minn. LR1.1(f), and D. Minn. LR72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties **by no later than October 9, 2007**, a writing which specifically identifies those portions of the Report to which objections are made and the bases of those objections. Failure to comply with this procedure shall operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.

If the consideration of the objections requires a review of a transcript of a Hearing, then the party making the objections shall timely order and file a complete transcript of that Hearing **by no later than October 9, 2007**, unless all interested parties stipulate that the District Court is not required by Title 28 U.S.C. §636 to review the transcript in order to resolve all of the objections made.